**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
(Eastern Division)

| | |
|---|---|
| In re:<br>Gregory and Valerie Robinson,<br>　　　　Debtors | Chapter 13<br>Case No. 09-19117-JNF |

**MOTION FOR ORDER COMPELLING**
**EXAMINATION OF CREDITOR PURSUANT TO FED. R. BANKR. P. 2004**

To the Honorable Joan N. Feeney, United States Bankruptcy Judge:

　　　　Gregory and Valerie Robinson, the above-referenced debtors ("Debtors") hereby move, pursuant to Fed. R. Bankr. P. 2004, for the entry of an order compelling the attendance of, and the production of documents by creditor Specialized Loan Servicing LLC, as successor servicing agent for The Bank of New York Mellon, its agents, servants and/or representatives (collectively, the "Mortgagee") for examination by counsel to Debtors.[1]

　　　　In support of this motion, Debtors respectfully state as follows:

*Background and Procedural History*

1.　　　　On or about September 25, 2009, the debtors filed the above-captioned voluntary petition for relief under Chapter 13 of Title 11 of the United States Code.

2.　　　　During the pendency of this case, Debtors' prior counsel filed a Motion for Authorization to Enter into a First Mortgage Loan Modification with the Mortgagee (then Bank of America).

3.　　　　The Modification Agreement signed by the Debtors, and pending Court approval, was sent to the Mortgagee via Federal Express with delivery confirmation on June 21, 2010.

4.　　　　Thereafter, this Honorable Court granted said motion on June 25, 2010.

---

[1] Debtors expressly reserve the right to seek to examine any other persons or entitles, whether pursuant to Fed. R. Bankr. P. 2004 or otherwise, if and as Debtors deem such examinations warranted and appropriate.

5. Pursuant to the terms of the Debtors' Modification Agreement with the Mortgagee, the Debtors' arrearage on their first mortgage at the time of filing would be cured by adding it to the end of the first mortgage, thus removing said arrearage from payment under the Chapter 13 Plan.

6. Additionally, pursuant to said terms, Debtors' interest rate was lowered from 6.375% to 3.250%, with a gradual annual increase over the following three years, resulting in a lower monthly mortgage payment beginning July 1, 2010.

7. As a result of the more favorable first mortgage modification and resulting lower monthly payments, Debtors filed an Amended Chapter 13 Plan, removing from payment under the plan the original first mortgage arrearage, which significantly increased their monthly plan payments to unsecured creditors.

8. Beginning July 2010, the Debtors paid monthly mortgage payments to the Mortgagee outside of the Chapter 13 Plan, pursuant to the court approved Modification Agreement.

9. However, notwithstanding the terms of the court approved Modification Agreement, the Debtors noticed that their first mortgage monthly statements continued to reflect the old monthly payment amount, rather than the monthly payments set forth in the Modification Agreement.

10. When Debtors inquired about the inconsistent statement amounts, Debtors were told by Mortgagee's agents (then Bank of America) that they should continue to make the payments pursuant to the Modification Agreement, and that the statement amounts would reflect the new monthly payments once "processed".

11. Over the course of the next 24 months, Debtors continued to make the first mortgage monthly payments pursuant to the terms of the court approved Modification Agreement, and the Mortgagee continued to accept and process said payments outside of the Chapter 13 Plan.

12. During those 24 months or so, Debtors continued to inquire and to be concerned about the lack of consistency between the monthly statements reflecting the prior original monthly payment and the approved modified monthly payments.

13. Despite numerous calls to Mortgagee, they could not get any clear explanation as to the inconsistent statements, their interest rate, nor their mortgage payoff figure.

14. When Debtors asked to speak with the individual who had negotiated the first mortgage Modification Agreement, they were told he was no longer employed by the Mortgagee, but that another would call them back to go over their loan information. Debtors never received any call back.

15. Despite numerous subsequent telephone calls to the Mortgagee, Mortgagee's were unable, and some instances unwilling, to provide loan information requested by the Debtors.

16. To date, over four years since the Modification Agreement, Debtors have yet to receive any specific information regarding their monthly payment, their interest rate, nor their mortgage payoff figure, notwithstanding that Mortgagee has continued to accept monthly mortgage payments outside of the Chapter 13 Plan.

17. Most recently, Debtors received notification dated 12/20/14 that Specialized Loan Servicing LLC was now the new servicer for Debtors' first mortgage.

18. On 12/28/14, Debtors received a notice from Specialized Loan Servicing LLC regarding alleged amounts owed, relative to Debtors' first mortgage.

19. Pursuant to said notice of 12/28/14, undersigned counsel for the Debtors requested information regarding the Debtors first mortgage on 1/12/15, in writing (via fax), and within 30 days, as set forth in the Mortgagee's 12/28/14 notice, yet received no reply.

20.  On 1/14/15, counsel followed up with the Mortgagee by telephone and was connected to Specialized Loan Servicing LLC's Modification Department.

21.  After explaining Debtors' situation to the individual ("Teresa") in the Modification Department, counsel was assured that a detailed explanation regarding Debtors' first mortgage, including monthly payment, interest rate and mortgage payoff figure would be forthcoming, once the loan status was "updated and evaluated".

22.  To date, neither counsel nor the Debtors have received anything further from Mortgagee, other than the Transfer of Claim filed by Specialized Loan Servicing LLC with this Court on or about 1/13/15.

23.  Based on the foregoing, the Debtors require additional information and documents in the possession of the Mortgagee and/or its representatives, in order to determine the present status of their first mortgage (i.e. monthly payment amount, interest rate, mortgage payoff figure), and whether there is any alleged arrearage which Mortgagee alleges should be cured.

### *Jurisdiction and Venue*

1.  This Court has jurisdiction to hear and determine this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The predicate for the relief requested herein is Fed. R. Bankr. P. 2004.

2.  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### *Relief Requested*

3.  The Debtors seek the entry of an order compelling the production of documents by and the potential attendance for examination of the Mortgagee by Debtor.

### *Basis for Relief*

4. Rule 2004 of the Federal Rules of Bankruptcy Procedure provides that any party in interest may examine any entity upon order of the Court. Fed. R. Bankr. P. 2004(a). Such an examination may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b). "[T]he examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for the purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan." Id. The scope of such an examination may be quite broad, as it is not limited by the restrictions of Fed. R. Civ. P. 26, and may thus be used for, among other purposes, "discovering assets and unearthing frauds." *In re Duratech Industries, Inc.*, 241 B.R. 283, 289 (E.D.N.Y. 1999) (*quoting In re GHR Energy Corp.*, 33 B.R. 451, 454 (Bankr. D. Mass. 1983)); *accord In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985).

5. Based on the foregoing, the Debtors respectfully submit that the entry of an order permitting the examination of the Mortgagee by Debtors is warranted and appropriate under the circumstances.

*Notice*

6. Debtor has served a copy of this motion upon: (i) the Mortgagee, through its listed agents, servants and/or employees; (ii) the Trustee and/or her counsel; and (iii) the Office of the United States Trustee. Debtor submits that such service is good and sufficient under the circumstances, and that no other notice is required.

**WHEREFORE**, Debtors respectfully requests that this Court enter an order: (i) granting this motion in all respects, and compelling the attendance of, and the production of documents by

the Mortgagee, through its agents, servants and/or emloyees; and (iii) granting to Debtors such other and further relief as this Honorable Court deems proper and just.

>Respectfully submitted,
>For the Debtors,
>
>By their attorney,
>
>*/s/ Douglas C. Dufault, Jr.*
>
>Douglas C. Dufault, Jr., Esq. (#5085)
>250 East Main Street, Suite #4
>Norton, Massachusetts  02766
>(508) 285-6000
>dcdjr@dufaultlawoffices.com

Dated:  March 3, 2015

### CERTIFICATE OF SERVICE

I, Douglas C. Dufault, Jr., hereby certify that on this date I caused to be served a copy of the foregoing Debtors' Motion for Order Compelling Examination of Creditor via CM/ECF electronic filing upon the following parties/counsel of record:

Carolyn Bankowski-13
Chapter 13 Trustee Boston
P. O. Box 8250
Boston, MA  02114


John Fitzgerald
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA  02109

Specialized Loan Servicing LLC
8742 Lucent Blvd., Suite 300
Highlands Ranch, CO  80129
ATTN:  Craig A. Edelman

Peter V. Guaetta, Esq., on behalf of The Bank of New York Mellon fka The Bank of New York
Guaetta and Benson
P.O. Box 519
Chelmsford, MA 01824
978-250-0999
bankruptcy@guaettalaw.com


   */s/  Douglas C. Dufault, Jr.*


DATED:   March 4, 2015